UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

AMIN SHARIF.

Criminal Action No. 23-630 (MAS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendant Amin Sharif's ("Defendant") Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(c). (ECF No. 121.) The United States of America (the "Government") opposed (ECF No. 129), and Defendant replied (ECF No. 131). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1, which is applicable to criminal cases under Local Criminal Rule 1.1. For the reasons set forth herein, the Court denies Defendant's Rule 29 motion.

## I.     BACKGROUND[1]

On August 4, 2023, Defendant was indicted in the District of New Jersey by a grand jury for the following Counts: (1) Attempted Transportation of a Victim to Engage in Prostitution in violation of 18 U.S.C. §§ 2421, 2426; (2) Sex Trafficking of a Minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2); (3) Use of an Interstate Facility to Promote Unlawful Activity in violation of 18 U.S.C. § 1952(a)(3)(A); (4) Transporting a Victim with Intent to Engage in Prostitution in

---

[1] For a complete recitation of the background facts and procedural history in this matter, the parties are directed to the Court's previous opinions and orders. (ECF Nos. 81, 92, 97.)

violation of 18 U.S.C. §§ 2421, 2426; and (5) Persuading a Victim to Travel to Engage in Prostitution in violation of 18 U.S.C. §§ 2422(a), 2426. (Indictment, ECF No. 35[2].)

Jury selection commenced on July 15, 2024 (ECF No. 98) and trial began on July 17, 2024 (ECF No. 100). (*See* ECF No. 97.) The Government's evidence at trial consisted of testimony from witnesses—including Federal Bureau of Investigation ("FBI") Special Agent Kelsey Granger ("Special Agent Granger"), three victim-witnesses, and two fact witnesses—as well as various records, including text messages, social media communications, photographs, and audio and video recordings. After the Government rested its case-in-chief, Defendant moved for a judgment of acquittal pursuant to Rule 29(a). (Tr. VI 1171:7-10, 1172:16-23, ECF No. 123.) The Court reserved decision on the motion. (*Id.* at 1177:16-18.) Defendant then rested without calling any witnesses. (*Id.* at 1214:12.) The trial ended on July 25, 2024. (Tr. VII 1332:13-14, ECF No. 122.) That same day, the jury returned a verdict of guilty on Counts One through Five. (*Id.* at 1337:9-1339:12.) The Court thereafter denied Defendant's Rule 29(a) motion. (ECF No. 116.)

On August 2, 2024, Defendant renewed his motion for judgment of acquittal on all five counts of the Indictment. (Def.'s Moving Br., ECF No. 121.) The Government opposed (Gov't's Opp'n Br., ECF No. 129) and Defendant replied (ECF No. 131).

## II.    LEGAL STANDARD

"Courts have held that motions for judgment of acquittal brought under Rule 29(a) and Rule 29(c) are decided under the same standard." *United States v. Curry*, No. 19-677, 2022 WL 445541, at *1 (D.N.J. Feb. 10, 2022) (citations omitted). "Under Rule 29, a defendant who asserts that there was insufficient evidence to sustain a conviction shoulders 'a very heavy burden.'" *United States v. Tiangco*, 225 F. Supp. 3d 274, 278-79 (D.N.J. 2016) (quoting *United States v.*

---

[2] The Court notes briefly that a revised redacted indictment was filed in this matter. (ECF No. 86.)

*Anderson*, 108 F.3d 478, 481 (3d Cir. 1997)). The Court's review is deferential, as it is not the Court's place to weigh evidence or determine credibility. *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). Rather, the Court "must view the evidence, and all reasonable inferences therefrom, in the light most favorable to the prosecution, resolving all credibility issues in the prosecution's favor." *Tiangco*, 225 F. Supp. 3d at 279. "Having done so, the [C]ourt must uphold the conviction if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). "A finding of insufficiency should be confined to cases where the prosecution's failure is clear." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)) (internal quotations omitted) (citation omitted).

## III.    DISCUSSION

Defendant argues that the Government's evidence in this case was insufficient to sustain a conviction for all counts of the Indictment. As support, Defendant largely makes factual or credibility related arguments. The Court denies Defendant's motion for the reasons stated below.

### A.    Count One (Attempted Transportation of a Victim to Engage in Prostitution)

With respect to Count One, the Government was tasked at trial with proving beyond a reasonable doubt that: (1) "[Defendant] knowingly attempted to transport Victim-1 . . . in interstate commerce as alleged in the Indictment; and (2) [Defendant] attempted to transport Victim-1 . . . with the intent that the victim would engage in prostitution." (Jury Instructions ¶ 57, ECF No. 130.)

At trial, the jury heard evidence that Victim-1 was contacted online by a social media account allegedly associated with Defendant. (Tr. I 36:25-39:11, ECF No. 118.) Victim-1, who was deceased and unavailable to testify at trial, reported to the FBI that she was asked "to come

3

from Idaho to New Jersey and New York" for the purpose of trafficking or prostitution. (*Id.* at 36:3-9, 37:5-11.) Special Agent Granger testified that she assumed Victim-1's social media and communicated with the individual identified as Defendant. (*Id.* at 37:20-24, 38:12-15.) Further, Special Agent Granger testified that Defendant "tr[ied] to recruit [Victim-1] to engage in prostitution" and purchased a plane ticket from Idaho, where Victim-1 lived, to New Jersey, in Victim-1's name. (*See e.g.*, *id.* at 38:25-39:6, 72:21-22, 80:16-20, 85:9-10.) The Government also presented evidence of written messages and recorded calls between Defendant and Victim-1, photographs and documents of Victim-1's social media profile, and records of the aforementioned plane ticket purchase. (Gov. Exs. 209, 300, 500; *see, e.g.*, Tr. I 70:7-11, 78:16-19, 100:2-10, 104:20-24, 108:20-109:2.)

First, Defendant argues that the Government "incorrectly admitted hearsay evidence of [Victim-1]'s many communications with [Defendant]" even though Defendant did not have the opportunity to cross-examine Victim-1, who is deceased.[3] (Def.'s Moving Br. 2.) The argument fails because communications between Defendant and Victim-1 are admissible as statements of a party-opponent under Federal Rule of Evidence 801(d)(2)(A). Notably, Defendant did not meaningfully rebut or address the Government's argument to this point in its reply brief. (*See* Def.'s Reply Br., ECF No. 131.) Moreover, Defendant did not raise any objection to the potential evidence at issue during trial. Specifically, Defendant did not object to the admission of: (1) Government Exhibit 204 (text messages between Defendant and Victim-1) (Tr. I 53:9-11);

---

[3] Defendant fails to clarify exactly which communications were improperly admitted and in turn improperly puts the burden on the Court to seemingly conduct a thorough review of all such potential evidence. *See Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006), *as amended* (May 5, 2006) ("Judges are not like pigs, hunting for truffles buried in the record." (internal quotation marks and citation omitted)).

(2) Government Exhibit 209 (recorded phone communication between Defendant and Victim-1) (*id.* at 100:2-9); and (3) Government Exhibit 300 (Facebook messages between Defendant and Victim-1) (*id.* at 70:7-11).[4] Defendant also objected to Government Exhibits 209A, 209B, and 209C (excerpts of the calls between Defendant and Victim-1) on the basis that the entire call should be admitted as opposed to selected excerpts[5]—not on the basis of admissibility. (*Id.* at 102:25-103:8.)

Second, Defendant argues that the "text conversation between [Victim-1] and [Defendant]" clearly demonstrates that "he did not intend for her to have sex with anyone in [New Jersey]." (Def.'s Moving Br. 2 (citing to Tr. II 342:1-21, 331:23-25, 332:1-3, ECF No. 119).) Instead, Defendant states that he intended for her to "make videos to be shown at a club, and for those videos to be sold." (*Id.*) In his reply brief, Defendant further states that the Government improperly introduced evidence of Special Agent Granger's misinterpretations as to what Defendant wanted Victim-1 to do, and not what Defendant actually intended to do. (Def.'s Reply Br. 9.) Yet, the legal standard here is clear. The Court must not weigh evidence as to Defendant's intent or determine Defendant's credibility. *See Tiangco*, 225 F. Supp. 3d at 279. Here, the jury determined, based on the evidence presented, that the Government proved the relevant elements beyond a reasonable doubt. *See Dent*, 149 F.3d at 187. As such, the Court finds that a rational factfinder could have

---

[4] Defendant raised a relevancy and lack of foundation objection to Exhibits 300A through 300L, which the Court overruled. (Tr. I 78: 6-8.) The Court granted Defendant's objection to the admission of Government Exhibit 204C. (*Id.* at 48:25-53:12.)

[5] The Government clarified that the videos were 30 minutes each and therefore the Government would only play the relevant portions. (Tr. I 103:20-104:5.) The Court overruled the objection, noting that Defendant was "free to bring in other excerpts . . . to contextualize the conversations on cross-examination." (*Id.* at 104:6-10.)

found the essential elements of Count One beyond a reasonable doubt based on the evidence presented. Accordingly, Defendant's motion as to Count One is denied.

### B.    Count Two (Sex Trafficking of a Minor)

As to Count Two, the Government was tasked at trial with proving beyond a reasonable doubt that: (1) Defendant knowingly recruited or enticed or harbored or transported or provided or obtained or advertised or maintained or patronized or solicited Victim-2; (2) Defendant knew or was in reckless disregard of the fact that Victim-2 was under the age of eighteen; (3) Defendant knew or was in reckless disregard of the fact that Victim-2 would be engaged in a commercial sex act; and (4) Defendant's conduct was in or affecting interstate commerce. (Jury Instructions ¶ 66.)

At trial, evidence was introduced that Defendant communicated with Victim-2 through the "Dallas Love" social media account and also as "Chance" through the TrumanPeterman947 account.[6] Victim-2 testified that "Dallas Love" patronized and solicited Victim-2 to come to Newark, New Jersey from Utah to perform exotic dancing and eventually "hav[e] sex with people for money." (Tr. IV 626:2-4, 627:12-628:7, ECF No. 125.) Victim-2 further testified that

---

[6] To be clear, the Court finds that there was substantial evidence introduced at trial that connected Defendant to five social media accounts—(1) Amin Sharif via Facebook; (2) "Dallas Love" via Facebook; (3) Razzle_mf_Dazzile5 via Instagram; (4) TrumanPeterman947 via Instagram; and (5) Paige6952 via Instagram—based on the fact that all the accounts were connected to a single Internet Protocol address ("IP address") registered to Defendant's cousin's address at which Defendant resided from 2020 until 2021. (Tr. I 39:20-40:3 (Special Agent Granger testifying to the same).) The Government presented evidence that several of those social media accounts had Defendant's photos, and that the registration information of some of those social media accounts overlapped. (Tr. I 39:17-21.) Moreover, Defendant admitted in his post-arrest interview that he used the aliases "Chance" and "Razzle Dazzle." (Tr. I 39:11-16, 39:20-40:3.) At trial, Special Agent Granger testified to the same, and added that Defendant sent communications with "his own voice or his image" from some of the aforementioned accounts. (Tr. I 39:20-40:3; Gov. Ex. 303B-303F, 304B-304D.) Finally, the Government presented evidence that connected Defendant across the different accounts and platforms. (*See, e.g.*, Gov. Exs. 302C, 303D, 303E, 304C, 304D.) Based on the circumstantial evidence presented, the Court finds that a reasonable factfinder could have made the conclusion that Defendant operated all of the aforementioned social media accounts.

Defendant told her that she "was supposed to receive money and a place to live that was covered, so [she] wouldn't have to pay for anything" in exchange for having sex or exotic dancing. (*Id.* at 627:12-628:7.) Next, evidence was introduced that Defendant knew Victim-2 was under eighteen based on text messages between "Chance" and Victim-2—specifically, Victim-2 testified that she told "Chance" that she was not eighteen. (Tr. IV 693:7-10; *see also* 693:15 ("[W]hat about when I really turn 18"); 694:13-14 ("When I am 18, I will come, though, if that is okay.").) Victim-2 also testified that she told "Dallas Love" that she was sixteen years old, but that "Dallas Love" told her to tell "Chance" that Victim-2 was eighteen. (*Id.* at 629:1-12.)[7] Relatedly, testimony was introduced that despite knowing about Victim-2's age, "Chance" told Victim-2, who lived in Utah, that he was "coming to get [her]." (Tr. IV 695:5-6.) Finally, the Government presented evidence of an advertisement that was posted online via the internet that described Victim-2 as a 21-year-old individual who was available to provide 32 sexual services. (Tr. I 116:12-117:10.) The jury was also shown evidence that the advertisement: (1) listed Defendant's phone number that was assigned to the phone collected from Defendant at the time of his arrest (*Id.* at 110:14-20, 115:25-116:4); (2) was posted using Defendant's e-mail address (*id.* at 117:19-20); and (3) used the IP address associated with Defendant's cousin's house, where Defendant resided during the same period (*id.* at 122:17-123:3).

Defendant argues that "testimony at trial by [Victim-2] was clear that she had no intention of performing a commercial sex act in [New Jersey]." (Def.'s Moving Br. 3.) As stated in the elements above, it is irrelevant what Victim-2's intentions were, such that she intended to only

---

[7] Defendant asserts that "there was ample evidence to show that [Victim-2] intentionally concealed her true age from [Defendant]." (Def.'s Moving Br. 3.) Again, the Court declines to weigh evidence and credibility at this stage, *Dent*, 149 F.3d at 187, and instead considers "all credibility issues in the prosecution's favor." *Tiangco*, 225 F. Supp. 3d at 279.

"dance"—the issue is whether *Defendant* knew or was in reckless disregard that Victim-2, regardless of her own intentions, *would be* engaged in a commercial sex act. Relevant here is that evidence was introduced that: (1) Defendant allegedly promised Victim-2 money and housing in exchange for sex and exotic dancing (Tr. IV 628:2-5), and (2) Defendant allegedly posted the sexual services advertisement of Victim-2 (Tr. I 116:12-117:10).

Based on the evidence presented, the Court finds that a rational factfinder could have found the essential elements of Count Two beyond a reasonable doubt. The Court, accordingly, denies Defendant's motion as to Count Two.

### C.    Count Three (Use of an Interstate Facility to Promote Unlawful Activity)

For Count Three, the Government was required to prove beyond a reasonable doubt that: (1) Defendant used or caused someone else to use an interstate facility; (2) this use of an interstate facility was done with the intent to promote, manage, establish, or carry on an unlawful activity; and (3) after this use of an interstate facility, Defendant performed or attempted to perform an act in furtherance of this same unlawful activity. (Jury Instructions ¶ 73.)

As noted above, the Government presented evidence suggesting that Defendant used the internet, an interstate facility, to promote prostitution and other sexual services on behalf of Victim-2. Evidence was also presented that Defendant attempted to persuade and recruit Victim-2 to promote prostitution, an unlawful activity. (*See* Tr. VII 1281:6-14.)

Defendant suggests that there was no evidence at trial that would permit a jury to properly conclude that Defendant posted the advertisement because it could have been posted by another individual using the same IP address associated with his cousin's residence. (Def.'s Moving Br. 4.) Defendant also notes that there were no text messages sent between Defendant and his cousin around that time, which suggests that Defendant may have not resided at his cousin's house when

8

the advertisement was posted. (*Id.*) In essence, Defendant inappropriately requests the Court to weigh the evidence that was introduced at trial and determine the credibility of the testifying witnesses. When resolving all credibility issues in the prosecution's favor, the Court finds that a rational trier of fact could have reasonably found or inferred that Defendant, and not another individual, posted the online advertisement based on the totality of the evidence presented. The Court, as such, denies Defendant's motion as to Count Three.

### D.    Count Four (Transporting a Victim with Intent to Engage in Prostitution)

As to Count Four, the Government was required to prove beyond a reasonable doubt that: (1) Defendant knowingly transported Victim-3, in interstate commerce as alleged in the Indictment; and (2) Defendant transported Victim-3, with the intent that the victim would engage in prostitution. (Jury Instructions ¶ 57.)

At trial, Victim-3 testified that Defendant picked up Victim-3 from Buffalo, New York and brought her to Newark, New Jersey. (Tr. IV 786:14-787:19; 789:3-10.) Victim-3 also testified that Defendant told her that she was "not going to make it in this business," which she assumed referred to prostitution because she told Defendant that she was "not going to do anything sexual." (*Id.* at 802:11-18.) Victim-3 testified that Defendant wanted her to go into VIP rooms in a club to "make more money [through] sexual acts . . . ." (*id.* at 793:15-794:8) and, on several occasions, said that he wanted Victim-3 to "hav[e] sex for money" in New York City (*id.* at 795:1-17).

Defendant argues that Victim-3 indicated that she did not want to, nor did she actually, engage in prostitution. (Def.'s Moving Br. 5.) In turn, Defendant seemingly asserts that there is no possibility Defendant intended for Victim-3 to engage in prostitution because she "made it clear several times that she had no intention of engaging in prostitution." (*Id.*) The relevant inquiry, however, is whether Defendant *intended* Victim-3 to engage in prostitution, not whether Victim-3

9

*actually* engaged in prostitution. Once again, the Court declines to delve into an analysis of Victim-3's credibility and weigh evidence as to Defendant's intent. Finding all credibility issues in the prosecution's favor, the Court finds that a rational trier of fact could have reasonably concluded that Defendant transported Victim-3 with the intent that she would engage in prostitution. The Court thus denies Defendant's motion as to Count Four.

### E.    Count Five (Persuading a Victim to Travel to Engage in Prostitution)

Finally, as to Count Five, the Government was tasked at trial with proving beyond a reasonable doubt that: (1) Defendant knowingly persuaded or induced or enticed or coerced Victim-4 to travel in interstate commerce, as alleged in the Indictment; (2) Victim-4 traveled in interstate commerce; and (3) Defendant acted with the intent that Victim-4 would engage in prostitution. (Jury Instructions ¶ 86.)

At trial, Victim-4 testified that she met Defendant on a few occasions. During one of those interactions, she testified that Defendant spoke to her about "the history of prostitution" and his involvement in the prostitution business. (Tr. V 985:21-986:6, 987:2-9, ECF No. 124.) She also testified that Defendant "[sold] himself . . . as a person that would be beneficial in a business partnership" which "mostly [involved] having sex for money[.]" (*Id.* at 1023:13-18, 1029:15-21.) Victim-4 also testified that at Defendant's direction, she picked him up in Allentown, Pennsylvania and drove to a client's house based on "verbal directions" provided by Defendant. (*Id.* at 987:13-23.) She stated that she was "98% sure [the client's house] was in New Jersey based upon the direction [they] were driving and based upon [their] conversation [in which Defendant] mentioned . . . a lot of money being in New Jersey." (*Id.* at 988:2-5.) Once they arrived at the client's house, Victim-4 testified that Defendant told her to "not worry about the money" and "to go get ready in the bathroom" because Victim-4 and Defendant went to the client's house "with

the intent for [Victim-4] to perform sex acts for money." (*Id.* at 988:25-989:11.) Victim-4 then testified that she had sex with five men in the bathroom. (*Id.* at 989:15-990:12.)

First, Defendant argues that Victim-4 was already a prostitute and thus "[i]t can hardly be persuasively argued that [she] . . . needed to be persuaded, induced, enticed[,] or coerced to travel to [New Jersey] to engage in prostitution, when that was her occupation and she was in fact, also engaged in 'grooming' other women to be prostitutes." (Def.'s Moving Br. 6.) Yet, the relevant issue for this Court is whether *Defendant* persuaded Victim-4 to travel in interstate commerce, not whether Victim-4 consented. Further, as stated in the jury instructions, "whether or not Victim-4 consented to travel in interstate commerce for the purpose of prostitution is irrelevant, as the consent or voluntary participation of the individual is not a defense." (Jury Instructions ¶ 90.) Defendant's argument is therefore without merit.

Second, Defendant argues that the Government failed to affirmatively establish that Victim-4 crossed state lines from Pennsylvania into New Jersey, especially because she was using drugs at the time. (Def.'s Moving Br. 6.) Defendant further argues that Victim-4's "credibility should have been seriously in doubt" because of her previous conviction in April 2024 for conspiracy to commit burglary. (Def.'s Moving Br. 6.) As extensively discussed, the Court's task at this juncture is not to weigh credibility. It was up to the jury to determine Victim-4's credibility when she testified that she was 98% sure that she crossed state lines from Pennsylvania into New Jersey.[8] (Tr. V 988:2-5.)

---

[8] The Court addressed a parallel issue when it denied Defendant's request to add a special interrogatory on the verdict sheet for Count Five. (Tr. VII 1257:6-1260:5.)

11

Based on the evidence presented, the Court finds that a rational factfinder could have found the essential elements of Count Five beyond a reasonable doubt. The Court therefore denies Defendant's motion as to Count Five.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion is denied. The Court will enter an Order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE